## THE ÆTNA LIFE INSURANCE COMPANY
### v.
### JAMES R. PAUL.

1. INSURANCE—RECOVERY OF PREMIUMS PAID.—The general rule as to the right of the assured to a return of premiums paid is, that when neither party is chargeable with fraud, and the contract is not against law or good morals, the assured may, in the absence of express stipulatio.s on the subject, recover back his premiums, where the risk has not been commenced, or where the contract is void *ab initio*. But when the risk is entire, and has once commenced to run, though it be for ever so short a period, there can be no apportionment or return of premiums.

2. NO RETURN IN CASES OF FRAUD.—Where a policy is void by reason of fraudulent misrepresentations or concealments on the part of the assured, the premiums can not be recovered back.

3. ACTS OF AGENT IN DRAWING APPLICATION.—A policy of insurance can not be avoided by the insurer on the ground of facts which were known to the agent who made the survey and filled up the application, and omitted to insert them therein.

4. AVOIDANCE OF POLICY BY INSURER.—If no proper grounds exist for an avoidance of a policy and refusal by the insurer to receive any more premiums, the insured may treat the contract as at an end and recover back all the money paid under it. But if, on the other hand, his misrepresentations or concealments were such that, under the rules of law, or by the express terms of the contract, or both, the policy was voidable, he will have no right to a return of the premiums.

APPEAL from the Circuit Court of Cook county; the Hon. ELLIOTT ANTHONY, of the Superior Court, sitting as Circuit Judge, presiding. Opinion filed January 19, 1882.

This was an action of assumpsit for money had and received, brought by James R. Paul, against the Ætna Life Insurance Company, to recover back the premiums paid by the plaintiff to the defendant, on certain policies of insurance on the life of the plaintiff. The facts disclosed by the record are as follows: On the 14th day of December, 1866, the plaintiff, who then resided at Nashville, in the State of Tennessee, being desirous of obtaining insurance on his life for the benefit of his wife and children, entered into negotiations therefor with one William D. Talbott, the defendant's agent at that place, which negotiations resulted in the execution and delivery to said agent of an application for a policy for $5,000 in the defendant company, signed by the plaintiff's wife. Appended to, and forming a part of said application, was a certain statement, consisting of various interrogatories and answers thereto, signed by the plaintiff, and also a certificate of a medical examiner in relation to the plaintiff's health, physical condition, etc. In the application it was expressly declared that the plaintiff was then in good health, of sound body and mind, and usually enjoyed good health, and that the answers and statements thereto appended were correct, and true, and that the applicant had not therein concealed, withheld or misrepresented any material circumstance in relation to the plaintiff's then past or present state of health, habits of life or condition, which might render an insurance on his life more than usually hazardous, or with which the directors' of the company ought to be made acquainted. The application also contained an agreement that it and the accompanying answers and statement should be the basis, and form a part of the contract or policy between the applicant and the company, and that if the same were in any respects false or fraudulent, the policy thould be void, and all moneys which might have been paid on account thereof, should be forfeited to the company.

The statement signed by the plaintiff failed to disclose the fact that he was or had ever been afflicted with any disease, but

among the questions and answers therein contained, were the following:

"Has the party ever had any of the following diseases: Apoplexy, asthma, bronchitis, consumption, colic, diseases of the heart, dropsy, fits, fistula, gout, insanity, liver complaint, palpitation, paralysis, quinsy, rheumatism, rupture, scarlet fever, spitting of blood, disease of urinary organs? No.

"Has the party had inflammatory rheumatism? If so, when and how often? No.

"Is the party subject to dyspepsia, dysentery or diarrhea? No.

"Has the party now, or has he had an habitual cough? No.

"Has the party ever met with any severe personal injury? If so, what? No.

"Has the party had during the last seven years, any severe sickness or disease? If so, state the particulars, and the name of the attending physician, or who was consulted and prescribed? No."

In the certificate of the medical examiner were the following questions and answers:

"Height, figure, weight, number of inches around the chest, temperament, general appearance and habits of life? Six feet, three inches; weight 170; good habits, good health, a fine specimen.

"Whether any signs of apoplexy, insanity, or any epilepsy, other nervous affection, or any predisposition to them? No.

"Whether paralysis, tremors, cramp or catchings in any part of the system, nervous affection of any kind, gout, aneurism, rupture, tumors, dropsy, or disease of kidney or bladder? No.

"What is the stethoscopic character of respiration? Is it full, easy, gentle, or is it otherwise? Is the respiratory murmur full and healthy, and to be heard over both lungs, or otherwise? Full and gentle.

"Rate and other qualities of the pulse? Sixty-eight; full and soft. Number of respirations per minute? Nineteen. Does percussion or auscultation indicate disease in any part of the viscera of the chest? No.

" Whether cough, occasional or habitual; or expectoration; or occasional or uniform difficulty in breathing, or palpitation? No.

" Whether abdominal disease, externally or internally? Whether any of the abdominal viscera are diseased or have been ? He has hemorrhoids.

" Opinion of life and prospect of longevity? Good.

" Do you consider the party safely insurable, and do you recommend company to grant policy ? I do."

On the foregoing application and statements, the defendant issued to the plaintiff a policy for $5,000, payable at his death, the premium being $183.60 per annum, payable on the 14th day of December, each year, during the continuance of the insurance.    The policy contained, among other things, the following conditions :

" And it is also understood and agreed to be the true intent and meaning hereof, that if the proposal, answers, and declaration made by the said James R. Paul, and bearing date the fourteenth day of December, 1866, and which are hereby made part and parcel of this policy, as fully as if herein recited, and upon the faith of which this agreement is made, shall be found in any respect false or fraudulent, then, and in such case, this policy shall be null and void; or in case the said assured shall not pay the said annual premiums on or before the several days hereinbefore mentioned for the payment thereof, then, and in every such case, the said company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall cease and determine.    And it is further agreed, that in every case where this policy shall cease to be or become void, all payments made thereon shall be forfeited to the said company, and also all profits and dividend credits accruing therefrom."

On the 20th day of February, 1867, by further arrangement between the parties, the defendant, on the same application and statements, issued to the plaintiff two other policies of insurance on his life; one for $3,000, and the other for $2,000, the annual premium on the former, being $110.16, and on the latter, $73.44, both being payable on the 20th day of February

in each year.   Each of these policies referred to said application and statements, and made them a part of the contract, and each contained the same conditions above recited.

On these several policies the plaintiff paid the annual premiums up to and including those maturing February 20th and December 14, 1872.   These payments were made part in cash and part by note, the cash payments aggregating as follows: On the $5,000 policy, $754.80; on the $3,000 policy, $409.20; and on the $2,000 policy, $269.48.   Evidence was also given by the plaintiff tending to prove the payment of the premiums on the $3,000 and $2,000 policies, which matured February 20, 1873, but on that point the evidence was conflicting.

Sometime in the year 1873 the plaintiff removed his residence to the city of Chicago, and being at that time unable to continue the payment of his premiums, he became desirous of surrendering his policies to the company, and of receiving back in their stead their surrender value, either in cash or in a paid-up policy.   It seems that before leaving Nashville, he entered into negotiations with Talbott, with a view of making such surrender, and left the policies in his hands.   After reaching Chicago, he continued the negotiations with Talbott by letter, and also laid the matter before Thomas C. Day, the company's agent at Chicago.   Talbott being unable to grant as favorable terms as those proposed by Day, transmitted the policies to the plaintiff, who received them about the last of December, 1873.   Shortly afterwards the plaintiff handed them to Day, the latter proposing on behalf of the company, in consideration of the surrender of the $5,000 and $3,000 policies, to issue to the plaintiff a paid-up policy for $786, and in consideration of the surrender of the $2,000 policy, to pay him in cash $150, such offer, however, being upon condition that the plaintiff should take out another policy of insurance on his life for $10,000, upon which there should be a semi-annual premium of $172.48, and to this proposition the plaintiff agreed, though, as it seems, somewhat reluctantly.   To carry out this agreement, the three policies were surrendered to the company, and the two new policies issued, the latter bearing date February 6, 1874.

As the basis of the $10,000 policy the plaintiff executed and delivered to the company a written application or proposal signed by himself, identical in terms with the one upon which the $5,000 policy was issued, and appended thereto were also certain interrogatories and answers signed by the plaintiff, and the statement of the medical examiner. In these papers the plaintiff represented that he was in good health, of sound body and mind, and usually enjoyed good health; and in his answers to the various interrogatories he denied that he was or ever had been afflicted with any of the several diseases and complaints therein specified, except that he had had rheumatism a little in his shoulder, and also to the following interrogatory : " Has the party had, during the last seven years, any severe sickness or disease ? If so, state the particulars, and the name of the attending physician, or who was consulted and prescribed?" he answered, "had piles from '65 to '69—that is all." In his several answers he stated, among other things, that he had not then, and never had had, asthma, bronchitis, consumption, disease of the heart, dropsy, fistula, liver complaint, palpitation, scrofula, tumors, ulcers, or an habitual cough ; that he was not subject to dyspepsia, dysentary or diarrhea, and that he never had had any signs of any nervous affection or of any predisposition thereto. In like manner, the statement of the medical examiner certified to his entire good health, and to his freedom from all the diseases to which particular attention was directed.

The first semi-annual premium on the $10,000 policy was paid by the plaintiff, the $150 above mentioned being applied thereto, and he also paid the semi-annual premium which matured August 6, 1874. Some time after the last payment, the plaintiff requested Day, the agent, to get the company to take up the paid-up policy, and pay him its equivalent in money, and then stated that his health was, and for a long time had been, much impaired. Day expressed great surprise at this disclosure, and asked the plaintiff to make a written statement of his condition, to be laid before the company. In compliance with this request, the plaintiff wrote, and handed to Day the following communication:

Ætna Life Ins. Co. v. Paul.

"CHICAGO, ILL. Oct. 16, 1874.

"D. C. DAY,

"Ag't Ætna Life Insurance Co.

"DEAR SIR: I comply with your request. First, I was in Nashville, Tenn., 1865; had hemorrhoids, or, as many call them, piles, very badly, and I had them badly in 1866, and up to 1869, and at times was confined to the house some two or three months at a time; have hemorraged until I fainted. Have not been able at any time to perform labor, or do any thing that required me to stand on my feet or walk much. A very little exercise would soon change my pulse from 70 to over 100. Have had doctors feel them when they were 130. During all this time I had to wear a supporter and a ball, to keep the rectum up while walking, and often I have had from seven to ten actions per day, always using a syrange, and I had to put the rectum up every time after an action, and several times a day besides. I never could travel around much. Can not go out early in the morning, but have to return early in the afternoon. Could not stand much excitement. The insurance on my life in 1866 and 1867 was entirely at the request of the agent. I told him at the time, I did not believe, in my condition, any company would take me; but the agent thought differently, and even brought the Dr. to my office to examine me, and then I did not believe the company would take me. I do not know what is in my application, as I never read it, but supposed the agent was honest. At the time, I know I gave him a correct statement, and I know he was fully aware of my condition all the time from 1869 to 1873. I was still having piles, but not as bad as before, but always using a syrange, having actions four or five times per day. The last of 1873 was some better than usual. I moved to Chicago Aug. 1873, and I immediately felt better, and continued to improve all fall, and in Dec., Jan. and Feb. was in a much better condition than it had been for some time; could walk around more, but all the time had to use a syrange. Last March a change commenced on me, and has been growing all summer long; I have been weak, and throwing up black, slimy corruption every morning, always being worse when I first get up in the morning. For the past five months my

Ætna Life Ins. Co. v. Paul.

back has been very weak; my chest and side hurts me all the time, and I am suffering all the time; my bowels very sore all the time. I have been suffering more the past month than usual. I have been in hopes when the weather got cooler I would gain a little strength, but it is not the fact. I cannot sit up straight but a very short time, and then must put my feet on something and lean back. I can not remain long in one position day or night. I often have spells of sneezing which last about 24 hours; often have them twice a week. They are a great deal like a person with a bad cold running at my nose. I am troubled with a breaking out on my limbs. They give me a great deal of trouble; often go to sleep. I have to be very careful while walking, or I would fall down. I do now think I am in a worse condition account of my back, chest, side and bowels, and spitting up so much corruption. I cough sometimes, but my cough I do not think dangerous. My appetite has been good most all the time. I am troubled with wind on my bowels badly all the time. Am very nervous.

"J. R. PAUL."

On receipt of the foregoing communication, the company elected to declare the $10,000 policy void by reason of misrepresentations and concealments in the plaintiff's application, and instructed its agent, Day, to receive no more premiums on said policy. At the time of the maturity of the semi-annual premium of February 6, 1875, the plaintiff offered to pay the same, and tendered the amount thereof to said agent, who refused to accept of it.

There is no evidence in the record that at the time of making the application for the $10,000 policy, the plaintiff made any disclosures as to the state of his health to the agent beyond what appears in the application itself, nor is there any evidence that the agent had any information on that subject from any other source. The application, it is true, appears to have been drawn up by the agent, and the plaintiff testifies that although he signed it he did not read it; but Day, the agent, testifies that in filling it up he read over to the plaintiff the several interrogatories therein, and wrote down his answers

thereto just as he gave them, and his testimony in this respect is not contradicted. Nor is there any evidence tending to show any artifice or device by which the plaintiff was prevented from reading the application before signing it or giving any explanation of the reason why he did not do so.

The plaintiff, in his testimony states that at the date of the $5,000 policy, his health was quite feeble from hemorrhoids, but apart from this one statement, there is no evidence in the record showing the condition of his health at that time, or showing what disclosures were made to Talbott, the agent who took the application, in relation thereto, beyond what appears from the application itself, and the plaintiff's said letter of October 16, 1874, which was read in evidence by the defendant.

On the trial, the plaintiff offered in evidence a letter written by him to Talbott under date of December, 26, 1873, and an answer of Talbott indorsed thereon. These letters were a part of the negotiations with Talbott for a paid-up policy, and the plaintiff's letter contained various claims and statements in relation to an understanding and agreement between himself and Talbott at the time the policies were issued, as to the terms upon which the plaintiff was to be at liberty to surrender his policies to the company. Talbott's reply made no allusion to these various statements, but merely said, " as Mr. Day seems disposed to do better than I have any authority or right to do, I respectfully return the policies herewith, and suggest, as a matter of convenience and profit to you, to call on Mr. Day, to obtain the paid-up policy he says you are entitled to, for I know I can not do it." It appears that the three policies which had been previously left with Talbott, were transmitted to the plaintiff inclosed with these letters. Against the objection and exception of the defendant, said letters were permitted to be read in evidence to the jury.

It appears that the $10,000 policy and the $786 paid-up policy, remained in the plaintiff's possession until the trial, and that the plaintiff then offered to surrender them up to the defendant.

On the foregoing evidence, the jury rendered a verdict in favor of the plaintiff for $2,600, for which sum and costs the plaintiff had judgment.

Mr. CHARLES H. WOOD and Mr. WM. B. CUNNINGHAM, for appellant; that if the risk has once commenced, there can be no apportionment or return of the premium, cited Tyrie v. Fletcher, Cowp. 668; Stevenson v. Snow, 3 Burr. 1237; Waters v. Allen, 5 Hill, 421; Hoyt v. Gilman, 8 Mass. 336; Clark v. Man. Ins. Co. 2 Woodb. & Minn. 482; Anderson v. Shorton, 8 Exch. 425; Hunt v. Silk, 5 East, 448; 2 Chitty on Contracts, 1092.

The assured is bound to make a full statement of facts touching his health, in his application: Campbell v. N. E. M. L. I. Co. 98 Mass. 381; Swick v. Home L. Ins. Co. 2 Ins. Law Jour. 415; Angell on Insurance, 391; May on Insurance, 330; Horn v. Am. Mut. Life Ins. Co. 64 Barb. 81; Rawls v. Am. Life Ins. Co. 36 Barb. 357.

A person in the full possession of his faculties and able to read, is bound to know and understand the contents of an instrument which he signs: W. & W. Mfg. Co. v. Long, 8 Bradwell, 463; Bigelow on Torts, 29; Bigelow on Frauds, 73; McCormack v. Molburg, 43 Iowa, 561; Hawkins v. Hawkins, 50 Cal. 558; Dutton v. Clapper, 53 Ind. 276; Rogers v. Place, 29 Ind. 577; Strong v. Linington, 8 Bradwell, 436; Bacon v. Markely, 46 Ind. 116; Lord v. Warren, 69 N. Y. 426; Moore v. Turbeville, 2 Bibb, 602; Farrer v. Alston, 1 Dev. Law, 69.

A mere collateral agreement is not within the scope of the agency, and can not be enforced: Constant v. Allegheny Ins. Co. 3 Wall. Jr. 513.

The written application can not be varied by a parol agreement: M. M. Ins. Co. v. Lyman, 15 Wall. 664; Boggs v. Am. Ins. Co. 30 Mo. 63; Rawle v. Am. Life Ins. Co. 27 N. Y. 282; May on Insurance, § 192; Bliss on Life Insurance, 455; Mecke v. Life Insurance Co. 8 Phil. 6.

Messrs. QUIGG & TUTHILL and Mr. E. B. McCLANAHAN, for appellee.

BAILEY, J. It is manifest from the character of the verdict in this case, that the jury intended to award the plaintiff the full amount of the premiums paid by him on all the policies

Ætna Life Ins. Co. v. Paul.

of insurance issued to him by the defendant, together with in-
terest thereon, and the question arises whether such verdict is
sustained by the evidence.

The general rule of law applicable to the right of the assured
to a return of premiums paid is, that where neither party is
chargeable with fraud, and the contract is not against law or
good morals, the assured may, in the absence of express stipu-
lations on the subject, recover back his premiums where the
risk has not been commenced, or where the contract is void *ab
initio*. But where the risk is entire, and has once commenced to
run, though it be for ever so short a period, there can be no ap-
portionment or return of the premium.

In cases of fraud, it has always been held that the premium
must be returned whenever the policy is rendered void by
reason of the fraud of the insurer. Thus, for example, where
the insurance was made on a certain voyage "lost or not lost,"
when the insurer, at the time he entered into the contract, pri-
vately knew that the ship was arrived safe, he was held to be
bound to restore the premium. Carter v. Boehm, 3 Burr. 1909.
At one time, however, the decisions of the English courts were
somewhat fluctuating as to whether the assured was or was not
entitled to a return of premium, where the contract was ren-
dered void *ab initio* by his own fraud. It was contended
that, as the insurer received the premium in consideration
of his taking upon himself the risk mentioned in the policy
he could have no right to retain it, if no risk was run; and
however improperly or unfairly the assured may have con-
ducted himself, that would not furnish a new consideration
to the insurer to be substituted in place of that expressed
in the policy, so as to enable him to retain the premium.
Wittenham v. Thornbrough, 2 Vern. 206; De Costa v. Scan-
deret, 2 P. Wms. 170; Wilson v. Ducket, 3 Burr. 1361. But
the impolicy as well as the injustice of this view was pointed
out by Lord Mansfield, in a case tried before him in 1785, and
not long afterwards the contrary doctrine was settled by the
court of King's Bench. Tyler v. Horne, cited in Park on Ins.
218; Chapman v. Kennett, Id. The rule thus established by
the King's Bench, has ever since that time prevailed in En-

gland, and has been adopted without any material dissent in this country. Freismuth v. Agawam Mut. Fire Ins. Co. 10 Cush. 587. It is, that where a policy is void by reason of fraudulent misrepresentations or concealments on the part of the assured, the premiums can not be recovered back.

For a full discussion of the foregoing principles, the following authorities may be consulted: 2 Marsh. on Ins. Chap. 16; 2 Arnould on Ins. Chap. 11; Park on Ins. 215; Hughes on Ins. Chap. 16; Ellis on Fire and Life Ins. 24, 153; May on Ins. Sec. 567; 2 Phillips on Ins. Chap. 22; Bliss on Life Ins. Sec. 423; Flanders on Ins. 154.

Of the policies of insurance in question in this case, the first three were issued on an application which represented the plaintiff as being in good health, except that in the certificate of the medical examiner it appeared that he was then afflicted with hemorrhoids. So far, then, as that particular disorder was concerned, there was no misrepresentation or concealment, and the policies were issued with full knowledge of the condition of his health in that respect. The only evidence in the record as to his health at that time, apart from the application itself, and the plaintiff's mere statement in his testimony, that he was in poor health, is to be found in his letter of October 16, 1874, offered in evidence by the defendant; and it is difficult to see that the letter, so far as it applies to that period, discloses any sickness or disease beyond a severe attack of hemorrhoids. It is furthermore asserted in the letter, that when the application was made, the plaintiff gave to Talbott, the defendant's agent, a correct statement of his condition, and told him that he did not believe that in his situation any company would insure him; and it also appears, at least inferentially, that Talbott, after recovering such information, drew up the application, and the plaintiff, supposing he had correctly stated the facts as disclosed to him, signed the application without reading it.

It thus appears that these three policies were valid, and not subject to avoidance by reason of any misrepresentation or concealment on the part of the plaintiff. The only disease from which the plaintiff was then suffering was disclosed in the application; or even if the plaintiff's letter should war-

rant a different conclusion, it appears that the condition of his health was fully disclosed to the company's agent, who was trusted to draw up the application, and who drew it up without inserting all the facts communicated to him by the plaintiff. A policy of insurance can not be avoided by the insurer on the ground of facts which were known to the agent who made the survey and filled up the application, and omitted to insert them therein. Atlantic Ins. Co. v. Wright, 22 Ill. 463; see, also, Commercial Ins. Co. v. Spankneble, 52 Id. 53; Lycoming Ins. Co. v. Barringer, 73 Id. 230; Reaper City Ins Co. v. Jones, 62 Id. 458.

The facts in relation to the $10,000 policy are essentially different. That policy was taken out something more than seven years after the date of the first application, and it does not appear that at that time the plaintiff made any disclosures in relation to his health, save what are embodied in the application then made. In that, his health is represented as good in every respect. The existence of each of the diseases as to which inquiry is made is specifically denied, and to the question whether, during the preceding seven years, he had been afflicted with any severe sickness or disease, he answered, "had piles from '65 to '69—that is all." That these representations were untrue, and that he was not only still suffering from hemorrhoids, but also from a complication of other disorders which were likely to shorten the period of his life, is abundantly shown by his letter. The statements of the letter stand entirely uncontradicted and unexplained, and no attempt appears to have been made to show by evidence what is claimed in argument, that they were untrue in fact, and only the creation of the plaintiff's morbid imagination.

Nor can it be held that the disclosures made to Talbott in 1866, were notice to the defendant of the condition of the plaintiff's health in 1874. The interval, it may be presumed, was sufficient for the eradication of all curable diseases, and the plaintiff's application made in 1874, represented in effect that he had recovered from the disease under which he was suffering at the date of his former policies.

It can not be doubted, we think, that the defendant's refusal

to accept the premium on the $10,000 policy when due, and its instruction to its agent to receive no more premiums thereon, was an avoidance of the policy, so far as the defendant had any right or power to avoid it, and the plaintiff's right to recover back the premiums paid, depends upon whether such avoidance was wrongful. McKee v. Phoenix Ins. Co. 28 Mo. 383. If no proper ground for such avoidance existed, then the plaintiff was at liberty to treat the contract as at an end, and recover back all the money paid under it. But if, on the other hand, his misrepresentations or concealments were such that, under the rules of law, or by the express terms of the contract, or both, the policy was voidable, he could have no right to a return of his premiums.

Even if it should be held that the defendant wrongfully terminated the policy, it is plain that the judgment must be reversed, for the reason that the verdict was for too large an amount. The recovery must be limited to the premiums paid on the policy thus wrongfully avoided. Those paid on the first three policies can in no sense be regarded as having been paid on the $10,000 policy. Those three policies had no connection with those of later date, except that their surrender formed a part of the consideration upon which the last mentioned policies were issued. The three policies, so far as this record shows, were in all respects valid, so long as the plaintiff was able to keep them in force by the payment of the annual premiums, and during all that time the defendant carried the risk thereby assumed, and had the plaintiff died then, the defendant would undoubtedly have been liable to pay the full amount thereby insured.

The surrender of the three original policies may be regarded as forming a part of the consideration of the $10,000 policy, and the $786 paid-up policy, to the extent of their then cash, or surrender value, and no further. This value was by no means necessarily commensurate with, or dependent upon, the amount of premiums which had been paid. What it really was, we have no evidence beyond the estimate which the parties themselves appear to have put upon it. For the surrender of the $5,000 and $3,000 policies, the defendant offered, and the plain-

tiff accepted, the $786 paid-up policy; and for the surrender of the $2,000 policy there was a like agreement, that $150 cash should be allowed, said sum to be applied in part payment of the first semi-annual premium on the $10,000 policy. There is no evidence of any unfairness in these estimates, or that they were not the full amount the policies to be surrendered were then worth. Furthermore, these values having been agreed upon by the parties with full knowledge of all the facts, and without fraud or coercion, such agreement must be regarded as conclusive between them.

It may be remarked that the evidence shows no direct attempt on the part of the defendant to set aside or avoid the $786 paid-up policy. Whether that policy was so related to the $10,000 policy, that an avoidance of the latter carried with it as a necessary result an avoidance of the former, or whether the paid-up policy is still in force, we do not now feel called upon to determine.

But we think it manifest from the evidence, that the defendant was justified in avoiding the $10,000 policy. The admissions of the plaintiff's letter of October 16, 1874, render it clear beyond controversy, that he was guilty of gross misrepresentations and concealments in the written application on which that policy was based. The application, which is shown to have been filled up according to his dictation, represents him as being in good health in every respect, and sound in body and mind, while it appears from his letter that he was, and for years had been, suffering from a complication of disorders and ailments of a painful and aggravated character, and which, if they had been disclosed at the time his application was made, would have altogether prevented the execution of the policy. That these representations were false, and were known to be so by the plaintiff, and that the defendant relied upon them in issuing the policy, is, as the evidence now stands, beyond dispute. It thus appears that the policy was avoided in consequence of the plaintiff's own fraud, and it necessarily follows, from well established rules of law, that he can not be entitled to a return of the premiums paid.

The same result follows from the terms of the contract itself.

Ætna Life Ins. Co. v. Paul.

In the application, which was made a part of the contract, the plaintiff agreed and warranted that the answers therein given were true, and that if said application was in any respect false or fraudulent, the policy should be void; and all moneys paid on account thereof should be forfeited to the defendant. This condition in the contract of the parties must be held to be valid, and under it, the plaintiff is precluded from recovering back his premiums. A condition in a proposal for a policy of life insurance almost identical with this, was considered by the English Court of Exchequer in Duckett v. Williams, 2 Cromp. & Mees. 348; and it appearing that certain representations in the proposal were untrue, it was held that under this clause the policy was void and the premiums paid forfeited to the company, so that they could not be recovered back.

The instructions of the court below were, in the main, in accordance with the principles above laid down, but the jury seem to have disregarded the instructions, and to have found their verdict against both the law and the evidence. Their verdict should have been set aside, and for the error of the court in refusing to set the verdict aside and award a new trial, the judgment must be reversed and the cause remanded.

Counsel for the defendant have urged with considerable force their assignment of error, based upon the admission in evidence of the plaintiff's letter of December 26, 1873, to Talbott, and Talbott's answer indorsed thereon. It became material in one view of the case, to prove the date at which the three policies were transmitted by Talbott to the plaintiff before their delivery to Day, and as it is shown that they were inclosed by Talbott with those letters, we think the letters themselves contain some evidence on that question. We do not see that they were admissible on any other ground or for any other purpose. It is very clear, at least, that the plaintiff's statements in his letter, not assented to or even noticed by Talbott in his answer, are not competent to prove the facts thus stated.

Judgment reversed.