Ætna Life Insurance Company et al.

v.

James R. Paul.

*Libel—Agency—Corporations—Practice.*

A corporation is not liable for a libel written by an agent without its express authority, although such libelous writing relates to the business of the corporation.

[Opinion filed December 11, 1890.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Messrs. Charles B. Wood and Horace S. Oakley, for the Ætna Life Insurance Company, appellant.

The Ætna Life Insurance Company is not connected with the alleged tort. There is nothing in the record to show that the officers of the company authorized or directed the publication of the circular. That such is the fact is not even pretended by the plaintiff. On the contrary, it appears that the expense of printing the circular was borne by the defendant Mason. The company did not pay the printer's bill. In its general instructions to agents the company gives them express directions as to the manner of procuring printed matter.

It is not in the nature of things that a foreign corporation should make a collecting agent, a thousand miles distant from its main office, a financial agent to charge the company. It is also out of reason that they should give him, or seem to give him, such general powers as to render it liable for

his tortious acts. The law will not imply assent. Meechem on Agency, Secs. 740, 741.

"A master is not liable for the wilful mischief of his servant, though he be at the time in other respects engaged in the service of the former."

"When the directions of the master are general as to the business in which the servant is employed, he confides in his discretion; but when the directions are specific it is otherwise. In the former case, the master becomes liable for all the acts of the servant, performed in the discharge of the duty required. But in the latter case, if the servant exceeds the specific directions, the act performed beyond the authority becomes his own, for which the master is not liable. The act then becomes wilful on the part of the servant, and is not in furtherance of the business of the master." Oxford v. Peter, 28 Ill. 434; and to the same effect are Fuller v. Voght, 13 Ill. 277; Foster, Ex'r, v. Essex Bank, 17 Mass. 479, at page 509; Keedy v. Howe, 72 Ill. 133, at p. 136.

"It has become the settled law both of England and of this country that a faithful report of the proceedings of courts of justice is a privileged publication and shall not be held a cause of action for libel. The courts consider the advantage to the community from such publication so great that private inconvenience must yield to the general good." Story v. Wallace, 60 Ill. 51.

To much the same effect is Cowley v. Pulsifer, 137 Mass. 392, where the reason for the privilege attaching to judicial proceedings is attributed to the security which publicity gives to the proper administration of justice. In the course of his opinion Holmes, J., says:

"It used to be said sometimes that the privilege was founded on the fact of the court being open to the public. Patteson, J., in Stockdale v. Hansard, 9 A. & E. 1212. This, no doubt, is too narrow, as suggested by Lord Chief Justice Cockburn in Wason v. Walter, but the privilege and the access of the public to the courts stand in reason upon common ground."

Messrs. THOMAS DENT and EDWIN BURRITT SMITH, for Ira J. Mason, appellant.

The court erred in overruling the defendants' motion to dismiss when the plaintiff rested, no special damages having been shown, and in refusing to grant a new trial for the same reason.   Reports of judicial proceedings are privileged. Townshend on Slander and Libel (2d Ed.), Sec. 229; Andrews v. Chapman, 3 Car. & Kirwan, 289; Dougall v. Knight, 17 Q. B. 636; McLaughlin v. McMakin, Brightly, 132; Bell v. Sun Printing Co., 42 N. Y. Sup. Ct. 567; Woodruff v. Bradstreet Co., 35 Hun, 16; Allen v. Pioneer-Press Co., 40 Minn. 117; Thomas v. Croswell, 7 Johns. 264; Saunders v. Baxter, 6 Heisk. 384.

The privilege extends to abridged reports of such proceedings.   In Andrews v. Chapman, 3 Car. & Kirwan, 289, Lord Campbell, Ch. J., says: "If what is stated is substantially a fair account of what took place, there is an entire immunity for those who published it."   As stated in Ackerman v. Jones, 37 N. Y. Sup. Ct. 42, "Anything that is true is fair."

"Proceedings of courts are matters fit for public information, and may be published by every printer, if he is not actuated by a malicious intent."   McLaughlin v. McMakin, Brightly, 132.

"An action can not be maintained for publishing a true account of the proceedings of a court of justice, however injurious such publication may be to the character of the individual."   Curry v. Walter, 1 Bos. & Pul. 525.

"If a verbatim report would have the same effect on his character as an abridged one, the abridged report is, so far as the defendant is concerned, a fair and impartial one."   Boogher v. Knapp, 97 Mo. 122.

The instruction to find for the defendants should have been given, the plaintiff having wholly failed to make proof of material parts of his case.   Anthony v. Wheeler, 130 Ill. 128.

"Where the evidence given at the trial, with all legitimate inferences that may legally and justifiably be drawn therefrom, is insufficient to support a verdict for the plaintiff, so that if such a verdict be returned it must be set aside, the court is not bound to submit the case to a jury, but may and should, in such a case, direct a verdict for the defendant." Chicago & A. R. R. Co. v. Adler, 129 Ill. 335.

No appearance for appellee.

MORAN, P. J.   Appellee had some policies of life insur-
ance in the appellant company, about which he had a litiga-
tion, one phase of which was decided by this court in an
opinion found in 10 Ill. App. 431.

In December, 1885, appellant Mason caused a circular to be
printed containing a statement of said decision, and circulated
the same to some extent.   Said circular is as follows :

" Bradwell's Reports, Appellate Courts, pages 431 to 446.
Ætna Life Insurance Company v. Paul.   February 6, 1874,
Paul applies for ten thousand insurance, in the application for
which he represents that he is in good health, of sound body
and mind, and usually enjoys good health; and in his answers to
various interrogatories he denied that he was or ever had
been afflicted with any of the several diseases and complaints
therein specified.   In like manner the statement of the medical
examiner certified to his entire good health, and to his freedom
from all the diseases to which particular attention was
directed.

" The first and second semi-annual premiums were paid, and
some time after August 6, 1874, he applied to the agent to sell
his insurance, giving as a reason that his health was and for a
long time had been much impaired.   The agent expressed
surprise, and asked him to make a statement in writing, which
was as follows (see page 437):

'CHICAGO, ILL., October 16, 1874.
'D. C. Day, Ag't Ætna Life Insurance Company.

'DEAR SIR :—I comply with your request.   First, I was in
Nashville, Tenn., 1865; had hemorrhoids, or, as many call
them, piles, very badly, and I had them badly in 1866, and up
to 1869, and at times was confined to the house some two or
three months at a time; have hemorrhaged until I fainted.
Have not been able at any time to perform labor, or do any-
thing that required me to stand on my feet or walk much.   A
very little exercise would soon change my pulse from 70 to over
100.   Have had doctors feel them when they were 130.   Dur-
ing all this time I had to wear a supporter and a ball to keep

the rectum up while walking, and often I have had from 7 to 10 actions per day, always using a syringe, and I had to put the rectum up every time after an action, and several times a day besides. I never could travel around much. Can not go out early in the morning, but have to return early in the afternoon. Could not stand much excitement. The insurance on my life in 1866 and 1867 was entirely at the request of the agent. I told him at the time I did not believe, in my condition, any company would take me; but the agent thought differently, and even brought the Dr. to my office to examine me, and then I did not believe the company would take me. I do not know what is in my application, as I never read it, but supposed the agent was honest. At the time I know I gave him a correct statement, and I know he was fully aware of my condition all the time from 1869 to 1873. I was still having piles, but not as bad as before, but always using a syringe, having actions 4 or 5 times per day. The last of 1873 was some better than usual. I moved to Chicago, Aug., 1873, and I immediately felt better, and continued to improve all fall, and in Dec., Jan., Feb., was in much better condition than it had been for some time; could walk around more, but all the time had to use a syringe. Last March a change commenced on me, and has been growing all summer long; I have been weak, and throwing up black, slimy corruption every morning, always being worse when I first get up in the morning. For the past five months my back has been very weak; my chest and side hurts me all the time, and I am suffering all the time; my bowels very sore all the time. I have been suffering more the past month than usual. I have been in hopes when the weather got cooler I would gain a little strength, but it is not the fact. I can not sit up straight but a very short time, and then must put my feet on something and lean back. I can not remain long in one position day or night. I often have spells of sneezing which last about 24 hours; often have them twice a week. They are a great deal like a person with a bad cold running at my nose. I am troubled with a breaking out on my limbs. They give me a great deal of trouble; often go to sleep. I have to be very

careful while walking or I would fall down.  I do now think
I am in a worse condition account of my back, chest, side and
bowels, and spitting up so much corruption.  I cough some-
times, but my cough I do not think dangerous.  My appetite
has been good most all the time.  I am troubled with wind
on my bowels badly all the time.  Am very nervous.

J. R. PAUL.'

"Judge Anthony says, page 445, that these representations
were false, and were known to be so by the plaintiff; that the
defendant relied upon them in issuing the policy, is, as the
evidence now stands, beyond dispute.  It thus appears that
the policy was avoided in consequence of the plaintiff's own
fraud."

Thereupon appellee commenced this action for libel.  On
the last trial thereof there was a verdict against both defend-
ants, with damages fixed at $500.

When the plaintiff's evidence was closed the appellant com-
pany moved to have the evidence excluded as to it, which
motion the court overruled.  After the verdict said company
moved for a new trial, on the ground, among others, that the
evidence did not support the finding.  The motion was over-
ruled and judgment rendered, and the case is brought here by
appeal.

The fact that Mason was the agent of the Ætna Life Insur-
ance Company in Chicago is the only one, proved, on which
the liability of said company for the publication of said circu-
lar can be based.  It is not pretended that the printing or cir-
culating of it was specially authorized by the company in
advance, or that it subsequently ratified such acts.  The
expense of the printing was paid by Mason and not by the
company, and the company was not informed and had no act-
ual knowledge that the circular was printed or sent out.

The rules and instructions which the company issued for the
government of their agents limited them as to the expenses
they might incur for the company, and no authority was
given to print anything unless application was made to the
home office.

Mason was, at the time he printed and circulated the matter

in question, the agent of the company for the purpose of transacting the ordinary insurance business of the company. It was, no doubt, within the scope of his duty to push the business of the company in competition with other companies in the like business, but by the regular and ordinary methods and not through means of malicious torts. Cooley in his work on Torts, page 121, after stating that a corporation would be liable for a libel on a business rival, contained in an official report through its board of directors, says: "If, on the other hand, some servant of the corporation, who supposed he might advance its interests by decrying the business of a rival, were to proceed to do so by communications in the daily press, it is plain that these, though having in view the same purpose. which the publication by the official board was meant to accomplish, can in no sense be regarded as corporate acts. They have not the corporate authorization; they are not made within the apparent scope of the servant's duty, and the tort is consequently an individual tort, purely and solely, and redress must be sought accordingly."

In Southern Express Co. v. Fitzner, 59 Miss. 581, it was held that the corporation was not liable for a libelous letter, written by its local agent, though it related to business of the company, for the reason that it did not appear that writing the letter was expressly authorized, or that it was within the scope of his authority.    See, also, Woodling v. Knickerbocker, 31 Minn. 268;  Harding v. Greening, 8 Taunt. 42.

We are of opinion that the motion of the appellant company to exclude the evidence and direct a verdict in its favor, should have been granted, and that having overruled that motion, the court should have granted a new trial on the ground that the evidence did not support the verdict.

As this error will work a reversal of the judgment, we think it unnecessary to pass at this time on other grounds assigned for reversal.

The judgment will be reversed and the case remanded.

*Reversed and remanded.*